Filed 09/17/25

| | | |
|---|---|---|
| VERMONT SUPERIOR COURT |  | CIVIL DIVISION |
| Washington Unit | | Case No. 23-CV-03739 |
| 65 State Street | | |
| Montpelier VT 05602 | | |
| 802-828-2091 | | |
| www.vermontjudiciary.org | | |

---

### Joseph Lampman v Department of Corrections

---

## ENTRY REGARDING MOTION

Title:          Motion for Summary Judgment  (Motion: 9)
Filer:          Dawn M. Seibert
Filed Date:     August 01, 2025
The motion is GRANTED.

The present matter concerns a kiss.   Petitioner Joseph Lampman is presently incarcerated with Vermont Department of Corrections at its Northern State Correctional Facility.  On July 30, 2025, Petitioner received a visit from his wife, Krista Lampman.  At the beginning of the visit, Petitioner gave his wife a kiss during their initial embrace.  Following this visit, Petitioner was cited for a Major B13 infraction for engaging in sexual acts or activity without the use of threats or force.

Petitioner had a hearing on August 2, 2023 in front of a hearing officer for the Department. At the hearing, Petitioner admitted to the kiss but claimed that he did not have knowledge that kissing constituted an infraction of the rules as kissing was allowed in two other facilities where he had recently been housed, where he was visited by his wife, and where the two had shared a kiss each time. The Hearing Officer affirmed the discipline based on Petitioner's admission.  Petitioner took a timely appeal, and the present matter has been in front of the Court since August 2023.

The present matter has been the subject of at least one motion to dismiss and one motion for summary judgment from the Department and one motion for summary judgment from Petitioner.  To date, the Court has denied all motions for lack of a clear record.

Petitioner has filed the present motion, which is largely a re-filing of his earlier motion.  The Department has not filed a response or objection to this motion.  As a result, the Department has waived its right to do so.  See *Pharmacists Mut. Ins. Co. v. Myer*, 2010 VT 10, ¶ 18 (noting that a party's "failure to oppose the motion effectively waive[s] the claims").

Under DOC Policy 410.01, a Major B 13 violation is defined as follows:

> Engaging in sexual acts or activity without use or threat of force, to include but not limited to, kissing, fondling of self or another person in a manner, which produces or is intended to produce sexual stimulation or gratification without the appearance of threat or harm on the part of both persons

DOC Policy 410.01, at 20 (effective May 1, 2012), available at outside.vermont.gov/dept/DOC/Policies/Facility%20Rules%20and%20Inmate%20Discipline%20Directive.pdf.

The provisions of Policy 410.01 are rules of general applicability, and they apply to all inmates at all times during their incarceration. These rules are the same, regardless of the facility in which the individual is residing, and as the date of adoption indicates, they have been in effect at all relevant times to the present case.

In the transcript of the original Department Hearing, it is evident that Petitioner did raise the issue of notice. When asked whether he admitted to the kiss, Petitioner admitted that he had, but he also stated: "No one told me that I couldn't hug and kiss my wife. Down in southern state we're allowed to and also down in Mississippi we're allowed to. So it was my first visit being back in this facility and I wasn't aware of it." *In re Joseph Lampman*, Major B13 DR Hearing, Incident #467156, at 4, Lines 5–7(Aug. 2, 2023) (Pet. Ex. C).

The problem with this case, however, is not one of notice. Contrary to Petitioner's testimony both Mississippi and Southern State, to the extent that they are governed by Policy Directive 410.01, do not permit kissing. Instead, the issue is primarily one of inconsistent and confusing enforcement. Petitioner claims that he was permitted to kiss his wife during her visitations at other facilities, including an out-of-state facility and an in-state facility in the southern part of the state. This means that on more than one occasion, Petitioner acted in derogation of the rules but was not disciplined, warned, or otherwise informed of the violation.

On top of this inconsistency, there is also the murkiness raised by another inconsistency between the Department's position that the accompanying embrace was permitted, and the facility's own rules, which states that inmates are not allowed to have physical contact with any visitor over the age of 11. Compare Northern State Correctional Facility Inmate Handbook at 24 (effective June 2017) (Pet. Ex. B), with *In re Joseph Lampman*, Major B13 DR Hearing, Incident #467156, at 4–5,

Lines 22, 1–2(Aug. 2, 2023) (Pet. Ex. C) ("A simple embrace at the beginning and the end of the visit is allowed, however, no kissing is allowed . . . .").

Together these inconsistencies illustrate what may be at the heart of the present case, which is a distinction between how Corrections expects an inmate to behave in the general population and how an inmate should behave in a visitation.

As one treatise has summarized the need for treating visitations differently:

The harshness of noncontact visiting is well-documented. An inability to touch a wife, husband, or child for the inmate and his or her family can be a "very traumatic" experience. Indeed, for inmates with small children who are not yet able to communicate with language, a noncontact visit is almost no visit at all. It has been argued that noncontact visiting can contribute to the breakup of marriages and can lead to mental problems. For all these reasons there is little doubt that noncontact visits are "a very unsatisfactory kind of communication."

Contact visits, on the other hand, are "emotionally and socially constructive." Visiting in that matter "tends to reduce inmate and visitor apprehension and tension." Thus, it is widely recognized that contact visiting can contribute to the easing of tension within a correctional facility and can contribute to the rehabilitation of inmates.

3 Michael B. Mushlin, *Rights of Prisoners* § 13:15 (5th ed. 2024 update) (internal citations omitted).

The record shows that the Department by its prior actions and its own admission treats physical contact during visitations in an inconsistent manner. The Department allow embraces, but some facilities do not allow a kiss. Others do—or at least have not sought to enforce against such signs of intimacy. Given these inconsistent approaches, the Court finds that Petitioner was effectively without notice of what part of his physical contact would trigger a discipline based on both past experience and on the current facility's waiver of discipline for physical contact during a visit.

The present Rule 75 appeal is limited and narrow. "[W]hen reviewing administrative action by the [Department] under V.R.C.P. 75, we will not interfere with the Department's determinations absent a showing that the [Department] clearly and arbitrarily abused its authority." *King v. Gorczyk*, 2003 VT 34, ¶ 7; *Molesworth v. University of Vermont*, 147 Vt. 4, 7 (1986) (certiorari review "confined to addressing substantial questions of law affecting the merits of the case.").

Notwithstanding this limited scope, the record before the Court is that this specific disciplinary action represents a clear and arbitrary abuse of authority. The Hearing Officer applied the rules inconsistently validating one violation while punishing another. In addition, the specific circumstances of this case create a sense of arbitrariness. Petitioner did not lunge into a kiss, but he acted in an extension of a permitted embrace, which was in-and-of-itself a violation of the rules—except as the facility has chosen to enforce them. Then there is Petitioner's unrebutted statements that he was not disciplined at other facilities for the same behavior. Drawing such arbitrary lines of enforcement for this inmate without prior notice does not bear a rational relationship to the policies and rules. See *Adams v. Gunnell*, 729 F.2d 362, 369 (5th Cir.1984); *Waters v. Peterson*, 495 F.2d 91, 100 (D.C. Cir. 1973).

While the Court can envision a larger purpose for such rules, including the avoidance of sexual abuse and passing of contraband, it finds that this visit was primarily governed by the rules for visitors under the facility's guidelines. Under these guidelines, Petitioner had no right to any physical contact, but the line the facility seems to be drawing between embraces and kisses does not bear rational relationship to the purposes of the rules other than to invite casual intimacy on one hand but shut it down on the other. Such enforcement without notice of basis is an abuse of authority that in this case mandates reversal.

### ORDER

Based on the foregoing, the Court finds that the Department's enforcement of a Major B13 disciplinary violation against Petitioner is an arbitrary abuse of its authority, and Petitioner's Motion for Summary Judgment is **Granted.** Petitioner's discipline is **Vacated and Reversed**.

This decision constitutes a final judgment of the Court, and this matter is remanded to the Department of Corrections to reinstate any benefits and privileges that were revoked or not credited, consistent with this vacating of the discipline.

Electronically signed on 9/12/2025 4:00 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge